## Case No. 15,628.

UNITED STATES v. LOTRIDGE et al.

[1 McLean, 246.] [1]

Circuit Court, D. Ohio.   Dec. Term, 1834.

FRAUDULENT CONVEYANCES—LEVY OF EXECUTION.

1. On a bill to set aside a fraudulent conveyance of land levied on by execution, under a judgment, the court will not enquire whether there was not personal property on which the marshal should have first levied.

[Cited in brief in Stewart v. Stringer, 41 Mo. 402.]

2. Where such sale has been fraudulent, the court will set the conveyance aside, and order the land to be sold, subject to the lien of the original vendor.

At law.

Mr. Swayne, for the United States.
Mr. Hunter, for defendants.

LEAVITT, District Judge.   The material allegations in the bill are, that on the 26th

[1] [Reported by Hon. John McLean, Circuit Justice.]

of December, 1831, the United States obtained a judgment, in the district court [case unreported], against the defendant Sherman; on the 6th of May, 1832, a writ of fieri facias, et levari facias, issued upon the judgment, on which the marshal returned, "No goods," and that he had levied on the tract of land described in the bill, as the property of the defendant, Sherman; that in March, 1831, the said Sherman mortgaged the land to the defendant, Barker; and on the 21st of December, in the same year, he conveyed it to the defendant, Lotridge, for the consideration expressed in the deed, of $225. The bill charges the conveyance to Lotridge to have been fraudulent and void; and prays that it may be set aside, and the land sold to satisfy the judgment, recovered by the United States. The defendants, Sherman and Lotridge have filed their answers, denying the allegations of fraud, and asserting, that said sale and conveyance were made in good faith, and for a valuable consideration. Sherman also asserts, that he had personal property on which the marshal should have levied. The defendant, Barker, has also answered, alleging that he sold the land to Sherman, who executed a mortgage therefor, to secure the payment of the purchase money; of which there is still due the sum of $188. To these answers there is a general replication.

The first point made by counsel for the defendants is, that the proceedings of the marshal, under the fi. fa. et lev. fa. are void, for the reason, that he did not first levy upon the personal property of the defendant in execution. To support this position the statute of Ohio is referred to, by which the sheriff, or other officer having an execution, is required to seize the goods of the defendant, if he has any, before he can levy upon land. There is proof that Sherman was in possession of some personal property, upon which the deputy marshal refused to levy, unless Sherman would agree to deliver it at Columbus. The question arising on this state of facts is. whether the court, in this form of action, can go back of the marshal's return, and set it aside, as false, so far as it declares, that the defendant had "no goods." The court has no hesitation in saying, that the defendant cannot, in this way, impeach the return of the marshal, and that it must be taken as true. If the marshal or his deputy has made a false return, the remedy must be by an action at law.

The next inquiry is, whether the allegations in the bill, as to the fraudulent character of the sale and conveyance, from Sherman to Lotridge, are sustained by the evidence. In the opinion of the court the charge of fraud is clearly made out. It is established, first, presumptively, by the facts, that the sale was made during the pendency of a suit against Sherman and in anticipation of a judgment; that no purchase money was paid, and no note or obligation taken there-

for; and that no change of possession followed the conveyance. And the allegation of fraud is established positively, by the evidence. The witness Cole, says he applied to Sherman to purchase the land, who told him, at first, he had sold it to Lotridge for $500; and that he would see Lotridge and ascertain if ..e would sell it. The witness called on Sherman soon after, who told him he had not seen Lotridge, but that the land was as much his as ever, and he would sell it to witness for $500. He also said, he had conveyed the land to Lotridge till his son should arrive at full age, when Lotridge was to reconvey. Witness procured a deed to be drawn, and offered it to Lotridge for execution, who objected on the ground that the deed contained a covenant of warranty, and he did no. know but the judgment of the United States would operate as a lien from the time of bringing the suit. Witness also states, that when he informed Sherman that Lotridge declined executing the deed, he would go and see if the old rascal meant to cheat ..im. The testimony of Cole is strongly corroborated by the witnesses, Wreather and Fuller, who testify to other declarations of Sherman, clearly establishing the fraudulent character of the sale and conveyance to Lotridge.

The principle insisted on by the counsel for defendant is, that the defendants having denied under oath, in their answers, the allegations of fraud, must be contradicted by the testimony of more than one witness, is admitted. But its application to this case is not perceived. The fact of the fraud is made out by the testimony of three witnesses, and by strong corroborating circumstances. The court therefore set aside the sale and conveyance as fraudulent, and decree, that the land be sold to satisfy the judgment of the United States, subject to the claim of Barker, for the purchase money due him. And as to Barker the bill is dismissed without costs.