MUELLER & GOGREVE v. ISAAC BATES ET AL.

(No. 8,576.)

1. The sheriff's return to an execution that he could find no property of the principal debtor and had levied on property of the surety, is conclusive, and no averment will be received to impeach it collaterally. Under the circumstances the sheriff might levy on the property of the surety.

2. Before the sheriff's return can be controverted, there must be direct proceedings against him, and the precise question put in issue. No collateral impeachment is permitted.

3. The sheriff is not responsible for his failure to levy upon property unless he is guilty of fraud in the premises.

SPECIAL TERM.—On demurrer to answer.

The plaintiffs recovered a judgment against Reeder & Bates—the first as principal debtor, the second as surety; and execution has issued, and the sheriff returns, " *that he can find no personal nor real property of Reeder, whereon to levy,*" Whereupon an other execution has been levied upon what is charged to be the real property of Bates, the surety, but which it is stated, is incumbered by liens and conveyances that involve the title, and prevent a sale. The petition charges that these are all fraudulent, as to the creditors, and ought to be removed. ..There is a prayer to that effect, as well as for a sale of the premises.

The defendant, Bates, answers:

" That his co-defendant, Reeder, at the time judgment was rendered, as well as when the execution was issued, as described in the petition, was, and still is the owner in fee simple of real estate, which is particularly described in his answer; that the title remained in Reeder's name, and that the property was, and is sufficient to satisfy the plaintiff's judgment." It is also alleged that the sheriff did not make his returns, on the executions referred to, because of any search for property, or any examinations made by him, but on the

contrary, the said returns were made on the suggestion of the plaintiffs, or their attorneys, and on information given to him by them. The answer is made a cross-petition, and the court is asked to compel the plaintiffs to exhaust the property set forth, before the defendant's estate is subjected.

To this answer the plaintiffs demur.

*W. M. Dickson,* for plaintiffs.

*Corwine & Hayes,* for Bates.

STORER, J. Two questions are presented. First, as to the effect of the sheriff's return. Second, as to the sufficiency of the defendant's averment, questioning the return of the officer.

By section 449 of the code, in all cases where judgment is entered against two or more parties, and the court has ordered it to be certified, who is the principal debtor, and who is security only, it is made the duty of the clerk to "issue execution, commanding the sheriff or other officer, to cause the money to be made of the goods, chattels, lands and tenements of the principal debtor, but for want of sufficient property of the principal debtor, to cause the same to be made of the goods, chattels, lands and tenements of the surety or bail." This provision is but the affirmation of section 27 of the statute of 1831, Swan, 482, and was intended to aid sureties, by compelling the creditor to exhaust the property of the principal debtor, in all cases, when it could be reached by the ordinary process of the law ; but when the property was burdened by liens, or otherwise involved in litigation, it could not have been the intention of the legislature to compel the creditors to levy, the result of which would be a protracted effort to sell incumbered real estate when, upon a division of the purchase money among preferred creditors, there might be no surplus for the satisfaction of his claim. It was held in *Com. Bank of Erie* v. *Western Reserve Bank,* 11 Ohio, 444, that the relation of

principal and surety is not affected by a judgment against them, but continues still to exist, and the surety in equity may demand from the creditors the pursuit of the debtor's unincumbered property; thus recognizing the rule so long established for the protection of sureties.   But it was also directed in that case, that the creditor was not bound to levy on the property of the principal, "the title to which was embarrassed, where difficulties to a fair sale existed, and that the probability of not realizing the money from it, in consequence of certain incumbrances, were sufficient causes to authorize the abandonment of a levy already made."   See, also, ib. 342, *Seymour* v. *King*.   This ruling had previously been practically made in *Piatt* v. *St. Clair's heirs*, 6 Ohio, 27, where it is said "a judgment creditor may resort to chancery, to subject the effects of his debtor, before he takes out execution on his judgment, if it appears that the debtor has not effects to satisfy it, or the effects are connected with equities or trusts, or involve a variety of interests, so that adequate remedy can not be had at law."   And as far back as the case of *Gilmore* v. *Miami Ex. Co.*, 2 Ohio, 294, where the supreme court were called upon, for the first time, to give a construction to the chancery act of 1824, the same doctrine was announced.

There is, then, no real distinction between the remedies, whether the surety asks protection or the judgment debtor assumes there is no ground for the creditor to file his bill. In neither case, while the party first bound to pay the debt is the owner of property which can, on the conditions already stated, be subjected to execution, can the creditor file his bill or proceed with his execution.

The question, therefore, is directly presented, what shall be sufficient evidence of the fact?

The sheriff has made his return.   He has informed us, under his official oath, he can not find any property, personal or real, of the debtor's upon which he can levy the process, in his hands, and, consequently, has levied it upon the estate of the surety.   Can this return be contradicted; if

not, is it not conclusive, except the officer is in complicity with the plaintiffs ? It is not alleged in the answer, nor is it introduced in argument that any such conduct has been exhibited, and we must, therefore, ascertain what is the legal effect of the officer's return. " The return of a sheriff " says Comyn, in Dig. Tit. return G., "is of such high regard that generally no averment shall be admitted against it," and the rule is extended to all his official acts of like character. Whenever the return is made, it is conclusive, and no averment will be received to impeach it, as was fully settled in the leading case of *Holland & Franklins*, 1 Leonard, 183.

" Hence a *sci. fa.* lies to a sheriff's return, for it is a part of the record," 1 Saunders, 38, *Jones* v. *Pope*, n. 3. and 2 id. 344, *Mildmay* v. *Smith et al.* In Ohio the point has been been authoritatively settled in *Hill* v. *Kling*, 4 Ohio, 136. " Indeed, it has never been doubted, as between parties and privies, say the court, that the return is conclusive."

We have found no adjudication, in any of our sister States, that opposes the doctrine, so long established. We ought, perhaps, to except the courts of Connecticut, who hold that the return is only *prima facie* evidence, though the sheriff himself can not be permitted to falsify it. *Butts* v. *Francis*, 4 Conn. 424; *Watson* v. *Watson*, 6 Conn. 334. Before the return can be controverted there must be direct proceedings against the officer, and the precise question put in issue. No collateral impeachment is permitted.

We find the precise question before us has been determined, both in England and the United States. Thus, a return by the sheriff, of "no property" or "no goods, lands, or tenements," can not be impeached in the course of ulterior proceedings, based thereon, whether in chancery, or elsewhere. *Stratford* v. *Twynam*, 1 Jacobs, 418; *Stoors et al.* v. *Kelsey et al.*, 2 Paige, 418; *United States* v. *Lotridge et al.*, 1 McLean 246.

On principle, then as well as authority, we are satisfied the return must be regarded as conclusive, for all the pur-

poses, regarded by the statute, and that the sheriff might well levy on the property of the defendant.

We are also equally clear upon the second proposition. There is no averment that the property of the principal was unincumbered, or that it could be sold without the difficulty of conflicting liens, to be encountered by a purchaser. On the contrary, the allegation made, may be true, and yet the plaintiffs would only be required to exhaust the apparent right of the principal debtor, and the sheriff would be excused from levying.

Nor does the averment of a want of diligence, on the part of the sheriff, in securing the property, or his inability to find it, affect the decision we make. Both are directly answered by the absence of any charge of fraud, or complicity between the sheriff and the plaintiff. Until this is stated, there is no foundation for the supposition. 2 Paige, 418. *Sup.*

Upon a careful consideration of the case, we sustain the demurrer. If the defendant desires to answer further he is at liberty to do so. We have thus explained the origin of the doctrine, not because there is in reality any question to settle, but so far as this court is concerned, there need be no difficulty in holding what is the true rule in such cases.

We have deferred giving any opinion upon the question how far the sheriff is bound to search for a judgment debtor's title to real estate; or what measure of diligence should be required, at his hands, to ascertain whether the debtor has "lands or tenements," whereof to satisfy the execution. The direct proposition is not now involved, and it would be but an " *obiter* " decision, should we express our conviction.

It may be said, however, with propriety, that as the levy on personal property alone affects the title, and makes it, therefore, necessary for the officer to search for the chattels; so the lien given upon the debtor's real estate, for one year after judgment, as against other creditors, and for five years " inter partes," would seem to require the creditor to point out the real property of the debtor to the sheriff, as well as to examine the title. The sheriff is allowed no fee by law; for searching the records, nor is he supposed to know which

party holds the prior lien, when he finds the land incumbered. He can not be subjected therefore, to any responsibility, either for the want of a thorough search, on his part, or a misapprehension of the true state of the title.

Demurrer sustained.